UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRENT W.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C19-5060 RBL

ORDER REVERSING AND REMANDING DENIAL OF BENEFITS

## I.    INTRODUCTION

This matter is before the Court on Plaintiff's Complaint (Dkt. 3) for review of the Commissioner of Social Security's denial of his application for supplemental security income ("SSI") benefits. Plaintiff applied for SSI benefits on July 15, 2015, alleging disability as of January 1, 2008.[1] *See* Admin. Record ("AR") (Dkt. 7) at 151-52, 270-75. Plaintiff's application was denied on initial review and on reconsideration. *Id.* at 151-78.

At Plaintiff's request, Administrative Law Judge ("ALJ") Joanne Dantonio held a hearing[2] on Plaintiff's claims. *Id.* at 41-124. On February 22, 2018, ALJ Dantonio issued a

---

[1] Plaintiff filed a previous application for benefits, which was denied and became final on October 25, 2013. *See* AR at 128-40, 145-47.

[2] ALJ Dantonio held two hearings because Plaintiff's medical records were incomplete at the time of the first hearing. *See id.* at 15.

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 1

decision finding that Plaintiff had severe impairments of left subtalar osteoarthritis, congenital tarsal coalition, and bipolar disorder vs. major depressive disorder. *Id.* at 19. ALJ Dantonio nonetheless found that Plaintiff was not disabled and denied his claim for benefits. *Id.* at 15-33. The Appeals Council denied review. *Id.* at 1-3.

Plaintiff argues that ALJ Dantonio erred in rejecting (a) the opinions of examining psychologist Alysa Ruddell, Ph.D., (b) the opinions of treating therapist Catrina Holden, M.A., M.H.P., and (c) the lay witness statements from Plaintiff's stepfather, mother, father, and cousin. Pl. Op. Br. (Dkt. 9) at 1. Plaintiff further argues that the ALJ erred at step five of the disability evaluation by failing to properly establish that Plaintiff could perform work that exists in significant numbers in the national economy. *See id.*

## II. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**A.  The ALJ Harmfully Erred in Rejecting Dr. Ruddell's Opinions**

Plaintiff argues that the ALJ erred in rejecting Dr. Ruddell's opinions. Pl. Op. Br. at 3-11. Dr. Ruddell examined Plaintiff on June 8, 2015. AR at 449-53. Dr. Ruddell conducted a clinical interview and performed a mental status exam. *Id.* She opined that Plaintiff had marked

limitations in his ability to learn new tasks, adapt to routine workplace changes, communicate and perform effectively in a work setting, maintain appropriate behavior, complete a normal work day or week without interruptions from his psychologically based symptoms, set goals, and plan independently. *Id.* at 451.

Dr. Ruddell examined Plaintiff a second time on May 18, 2017. *Id.* at 868-72. Dr. Ruddell again conducted a clinical interview and performed a mental status exam. *Id.* She largely reiterated her 2015 opinion, but found that Plaintiff was only moderately limited in his ability to communicate and perform effectively in a normal work setting, and maintain appropriate behavior. *Id.* at 870.

The ALJ gave Dr. Ruddell's opinions little weight. *Id.* at 27. The ALJ gave four reasons for this determination. *Id.* First, the ALJ found that Dr. Ruddell's opinions were inconsistent with the overall medical evidence, which showed that Plaintiff improved with appropriate medication and therapy. *Id.* Second, the ALJ found that Dr. Ruddell's opinions were inconsistent with her own exam findings. *Id.* Third, the ALJ found that Dr. Ruddell based her opinions on incorrect information about Plaintiff's work history. *Id.* Fourth the ALJ found that Dr. Ruddell's opinions were inconsistent with Plaintiff's activities of daily living. *Id.*

To reject Dr. Ruddell's opinions, which were contradicted by other evidence in the record, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). The ALJ's reasons did not meet this standard.

The ALJ's first reason for rejecting Dr. Ruddell's opinions—that they were contradicted by the overall medical evidence—is not supported by substantial evidence. The ALJ did not identify any contradictions, but instead pointed to a few notes that Plaintiff "engaged in a

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 3

pleasant manner with mental health professionals." AR at 25, 27. The ability to engage with professionals trained to deal with mental health issues does not contradict Dr. Ruddell's opinion that Plaintiff would struggle to communicate and maintain appropriate behavior in a work setting. *Cf.* 20 C.F.R. § 404, Subpart P, App'x 1, § 12.00(C)(6)(b) (2016) ("Your ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate your ability to complete tasks in the context of regular employment during a normal workday or work week."). Moreover, the ALJ's claim that Plaintiff "improved with appropriate medication and therapy treatment" is not supported by the evidence and fails to acknowledge that a claimant can improve without getting to the point of being able to work. *See Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014) (noting that "'there can be a great distance between a patient who responds to treatment and one who is able to enter the workforce'") (quoting *Scott v. Astrue*, 637 F.3d 734, 739-40 (7th Cir. 2011)). The ALJ did not point to evidence in the record, nor did the Court locate any, that shows Plaintiff's symptoms improved to the point that they were well-controlled. *See* AR at 27. In fact, the records to which the ALJ cited show the opposite. For example, the ALJ cited to a record that supposedly showed Plaintiff's "ability to handle his temper improved with appropriate therapy." *See id.* at 25, 711. That record actually indicates that Plaintiff "reported challenges with handling his temper," and "broke many of his own possessions." *Id.* at 711. Plaintiff's therapist noted at that appointment that Plaintiff had regressed in his treatment. *Id.* The ALJ's reasoning was therefore unsupported by substantial evidence, so the ALJ erred in rejecting Dr. Ruddell's opinions as contradicted by the medical evidence.

        The ALJ's second reason for rejecting Dr. Ruddell's opinions—that they were contradicted by her own exam findings—fails because the ALJ failed to explain his analysis.

"[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1013-14 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). The ALJ recited some of Dr. Ruddell's exam findings, but did not explain how they contradicted her opinions. *See* AR at 24-25, 27. This was too vague to satisfy the "specific and legitimate" standard for rejecting an examining doctor's opinions, and thus the ALJ erred.

The ALJ's third reason for rejecting Dr. Ruddell's opinions—that they were based on inaccurate information from Plaintiff regarding his work history—fails because the ALJ did not explain the relevance of the information to Dr. Ruddell's opinions. Plaintiff testified that he left his job as a welder with Peck Weld Company because his employer went out of business, and lost his job with Olympic Machine & Welding because he had a conflict with his foreman. *See id.* at 81, 106. Plaintiff testified that he believed the Peck job was his last job. *Id.* at 81. However, Plaintiff told Dr. Ruddell that he lost his last job because he argued with his supervisor. *Id.* at 449, 868. These statements are contradictory, but the ALJ has not explained how they weaken Dr. Ruddell's opinions. Plaintiff lost a job for arguing with a supervisor, and the fact that it was not his last job does not undermine Dr. Ruddell's opinions, which were based on objective measures such as a clinical interview and mental status exam in addition to Plaintiff's self-reported work history. *See id.* at 449-53, 868-72.

Finally, the ALJ's determination that Dr. Ruddell's opinions were contradicted by Plaintiff's daily activities is neither accurate nor reasonable. Plaintiff lives with his parents, but has significant struggles interacting with them. *See id.* at 417 (noting that Plaintiff's parents "lock [their] bedroom door at night because of [sic] his mood swings can be so strong"), 421

(noting that Plaintiff's parents go to their second house when Plaintiff is frustrated and angry). Furthermore, the activities to which the ALJ cited as evidence of Plaintiff's functioning are basic life activities that do not contradict Dr. Ruddell's opinions. The fact that Plaintiff cooks (frozen meals), goes grocery shopping (for 20 minutes two to three times a month), and plays video games does not contradict Dr. Ruddell's opinion that Plaintiff has significant social and cognitive limitations. *Cf. Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

In sum, the ALJ failed to provide any specific and legitimate reasons for rejecting Dr. Ruddell's opinions. Consequently, the ALJ harmfully erred. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that an error is harmless only when it is "'inconsequential to the ultimate nondisability determination'") (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

**B.    The ALJ Harmfully Erred in Rejecting Ms. Holden's Opinions**

Plaintiff argues that the ALJ erred in rejecting Ms. Holden's opinions. Pl. Op. Br. at 8-11. Ms. Holden treated Plaintiff's mental health issues starting in November 2015. AR at 591-606, 617-24, 678-742. Ms. Holden completed a mental residual functional capacity statement on March 13, 2017. *Id.* at 805-08. The form Ms. Holden completed had her rate Plaintiff's ability to function in various areas in one of four categories: "Does not preclude performance of any aspect of the job," "[p]recludes performance for 5% of an 8-hour work day," "[p]recludes performance for 10% of an 8-hour work day," and "[p]recludes performance for 15% or more of

an 8-hour work day." *Id.* at 805. Ms. Holden opined that Plaintiff fell into the last category in his ability to understand and remember detailed instructions, carry out even very short and simple instructions, maintain attention and concentration for extended periods of time, interact appropriately with the general public, set realistic goals, and plan independently. *Id.* at 806-07. Ms. Holden opined that Plaintiff would be off-task due to all of his impairments 25% of the time, would be absent from work 10% of the time, and would be unable to complete a full work day 15% of the time. *Id.* at 807.

The ALJ gave Ms. Holden's opinions little weight. *Id.* at 29. The ALJ reasoned that Ms. Holden's opinions were not supported by her treatment records, were inconsistent with the overall medical evidence, which the ALJ believed showed improvement with medication and treatment, and were inconsistent with Plaintiff's activities of daily living. *Id.*

Ms. Holden is considered an "other source" under the Commissioner's regulations. *See* 20 C.F.R. § 416.902(i); *Garrison*, 759 F.3d at 1013-14. An ALJ must consider medical opinions from treatment providers such as Ms. Holden, but need only provide "germane" reasons for rejecting such opinions. *See Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016) (citing *Molina*, 674 F.3d at 1111). The ALJ's reasons did not meet this standard.

The ALJ's first reason for rejecting Ms. Holden's opinions—lack of support in her treatment records—is inaccurate and too vague. An ALJ may not reject evidence based on an inaccurate portrayal of the record. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (reversing ALJ's decision where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record"). The ALJ reasoned that Ms. Holden's opinions were "not supported by her treatment records, as she did not perform an actual psychological evaluation of the claimant." AR at 29. However, Ms. Holden performed an intake assessment

evaluating Plaintiff's conditions, which included a mental status examination. *See id.* at 595-98. Furthermore, Ms. Holden's treatment notes show a variety of symptoms that could support her opinion, but which the ALJ failed to even address. For example, Ms. Holden noted that Plaintiff often made minimal eye contact. *See id.* at 711-12, 715-16, 722, 733, 736. Plaintiff had difficulty staying on topic and struggled to focus on his goals. *Id.* at 712-13. Plaintiff appeared frustrated, agitated, and tense during his sessions. *Id.* at 720, 722, 724, 726-27, 729, 733-34, 736. The ALJ is ultimately charged with evaluating how well this evidence supported Ms. Holden's opinions, but could not reject those opinions without accurately addressing Ms. Holden's treatment records.

The ALJ's second and third reasons for rejecting Ms. Holden's opinions—contradiction by the medical evidence and Plaintiff's daily activities—mirror two of the reasons the ALJ gave for rejecting Dr. Ruddell's opinions. *See* AR at 27. These reasons fail with respect to Ms. Holden for the same reasons they failed with respect to Dr. Ruddell. *See supra* Part II.A. The ALJ thus failed to provide any germane reasons for rejecting Ms. Holden's opinions, and harmfully erred. *See Molina*, 674 F.3d at 1115.

**C.      The ALJ Harmfully Erred in Rejecting the Lay Witness Testimony**

Plaintiff argues that the ALJ erred in rejecting lay witness statements from Plaintiff's stepfather, mother, father, and cousin. Pl. Op. Br. at 11-14. In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ must "give reasons germane to each witness" before he can reject such lay witness evidence. *Molina*, 674 F.3d at 1111 (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557

F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

Plaintiff's mother and stepfather submitted statements describing their interactions with Plaintiff and observations from living with him. AR at 417-18, 421-22. Each described anger, aggression, and social anxiety issues. *See id.* Plaintiff's father submitted a statement describing his observations of Plaintiff from seeing him two to three times a week. *Id.* at 425. Plaintiff's father described Plaintiff's difficulties with foot pain, depression, social isolation, anger, inability to focus, and inability to deal with stress. *Id.* Plaintiff's cousin submitted a statement based on her observations of Plaintiff. *Id.* at 432. She described Plaintiff's difficulties with foot pain and anger. *Id.*

The ALJ gave all of these statements little weight. *Id.* at 30-31. The ALJ reasoned that all of these statements were inconsistent with the overall medical evidence. *Id.* at 29-31. The ALJ further reasoned that Plaintiff's stepfather and mother's statements were inconsistent with Plaintiff's daily activities, and were undermined by the fact that they "provide[d] financial support for" Plaintiff, so they were "motivated by financial gain to support [Plaintiff's] pursuit of monetary benefits." *Id.* at 30.

The ALJ's rejection of the lay witness statements because of inconsistencies with the medical evidence and Plaintiff's daily activities mirrors the ALJ's reasoning with respect to Dr. Ruddell and Ms. Holden's opinions. *See id.* at 27. The ALJ's reasoning here fails for the same reasons it failed with respect to those opinions. *See supra* Part II.A.

The ALJ's determination to discount Plaintiff's stepfather and mother's statements because they support Plaintiff financially improperly imputes an ulterior motive to Plaintiff's stepfather and mother. The Ninth Circuit has repeatedly rejected this kind of blanket statement. *See Diedrich v. Berryhill*, 874 F.3d 687, 694 (9th Cir. 2017); *Valentine v. Comm'r Soc. Sec.*

*Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *Jessie v. Astrue*, 360 F. App'x 876, 877 (9th Cir. 2009). The ALJ therefore erred in rejecting Plaintiff's stepfather and mother's based on their alleged financial motivation. Consequently, all of the ALJ's reasons for rejecting the lay witness statements fail, and the ALJ harmfully erred. *See Molina*, 674 F.3d at 1115.

**D.     The ALJ Harmfully Erred at Step Five**

Plaintiff argues that the ALJ erred at step five for two reasons. Pl. Op. Br. at 14-17. Plaintiff first argues that the vocational expert's methodology for determining the number of jobs existing in the national economy that Plaintiff could perform is flawed. *See id.* at 14-16. This argument fails. The vocational expert explained her methodology at the hearing. *See* AR at 119-23. A vocational expert's "recognized expertise provides the necessary foundation for her testimony." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Plaintiff has not established that the vocational expert's qualifications are lacking, or that her methodology was one that is not accepted in her field.

Plaintiff next argues that the requirements for the job of document preparer, one of the three jobs the ALJ identified as other work Plaintiff could perform, exceed the limitations the ALJ set forth in the RFC. Pl. Op. Br. at 16-17. But the ALJ identified two other jobs that Plaintiff could perform, so any error would be harmless.

The ALJ nonetheless erred at step five because she failed to properly evaluate the medical and lay witness evidence, as discussed above. *See supra* Parts II.A-B. The RFC on which the ALJ based her step five assessment was thus incomplete, depriving the ALJ's step five determination of substantial evidentiary support. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040-41 (9th Cir. 2007) (holding that the ALJ's RFC assessment and step five determination were not supported by substantial evidence where the ALJ's RFC and hypotheticals to vocational

expert failed to include all of the claimant's impairments).

E.   **Scope of Remand**

Plaintiff asks the Court to remand this matter for further administrative proceedings. Pl. Op. Br. at 17. The Court agrees that this is the appropriate remedy. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

On remand, the ALJ shall reevaluate Dr. Ruddell's opinions, Ms. Holden's opinions, and the lay witness statements of Plaintiff's stepfather, mother, father, and cousin. The ALJ shall reevaluate Plaintiff's RFC and the step five determination. The ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in light of this opinion.

### III.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 16th day of August, 2019.

Ronald B. Leighton
United States District Judge